Good morning, ladies and gentlemen. Our first case for argument this morning is Teledyne Technologies v. Shekar. Mr. Leonard. Good morning, May it please the Court. Mike Leonard on behalf of Appellant Mr. Shekar. We're here today appealing the District Court's ruling that held Mr. Shekar in contempt. The District Court's holding that found that he had not purged himself of that contempt and the judgment that was therefore entered against him in amount in excess of $400,000 including damages and attorney's fees. The difficulty with this case is that the District Court's decisions both in the finding of contempt and in the purging of contempt all had evidentiary legs that were premised upon the various technologies in the case. In each instance, either the testimony was unrebutted in favor of Mr. Shekar or there was a factual dispute upon which he was denied discovery and he was denied discovery repeatedly in this case. The first technological issue that formed the foundation for the two opinions was his Teledyne laptop computer. He provided unrebutted testimony that at 928 a.m. on the date of his termination after a detailed discussion with Teledyne on the phone, he no longer had access to the Teledyne servers which harbored all their documents. He no longer had email access and he no longer had access... Counsel, the District Court did not credit your client's testimony and so it effectively drops out for us on appeal unless you can give us some basis for challenging the judge's credibility finding against your client. I can't. And that's a very steep burden of proof and I didn't see anything in your briefs that would cause me to question that holding. I'm sorry. The testimony they offered in response was by the so-called expert Mr. Rothman who testified that in response to Mr. Shekar's testimony that it was 928 that he had absolutely no idea at what time Teledyne had barred him from the servers. So it really wasn't a credibility question. It was a question of evidence offered by both sides. The court accepted Rothman's testimony even though he admitted on cross-examination and in response to counsel's questions that he had no idea at what point Mr. Shekar was cut off. Therefore, there was not conflicting issues of credibility. It was admission by the expert and essentially that Mr. Shekar's testimony was correct. And there was a further exacerbation of that problem because there was an answer in this case. I don't, I don't, I must say I do not comprehend how you can say that when the expert says he can't be perfectly sure of something that's an admission that the other person's testimony is correct. It's not. The other person's testimony could be a tissue of lies but the expert is candid enough to say I can't completely prove that. We still have findings of fact by the district judge. The Supreme Court says in Anderson against City of Bessemer City that the Court of Appeals has to accept them. Basically, you know, our line is unless they are just screamingly obviously wrong. What makes these findings by the district judge screamingly wrong? With respect to that particular issue, two things. Number one, he didn't say it wasn't a close call that he could fix a time period. He couldn't. More importantly, there was an objective answer here. There were server logs which are documents maintained by the company in your ordinary course of business that track just like a cell phone tower. When you ping the server, when you make contact with Teledyne, when your data goes to them, when it comes back. There was an answer objectively and repeatedly Mr. Shakar through his attorneys over the course of the case demanded not only informally they be produced but by way of motion repeatedly that the server logs be produced because there was an objective answer to the question even if you believe there was some credibility dispute. The second issue and it relates to the same issue is that the judge allowed Teledyne to introduce the testimony of Mr. Manley, the IT director by way of affidavit and otherwise. Again, Mr. Shakar through his various counsel sought to depose Mr. Manley on the issues relating to the Teledyne system and Mr. Shakar's access. Again, inexplicably the district court denied all attempts to depose Mr. Manley. With regard to the other problem. Those discovery requests came later in the proceedings as I understand the record. They did. Not before the contempt hearing. That's correct. Why should we not construe that as a waiver? Well, two things happened here. You had the contempt hearing. I agree with you that there was no discovery. That was pretty much on an expedited basis. You had the TRO. You had the preliminary injunction. Then you have four cause hearing. All within a period of about 90 days. And I agree with you. At that point in time, no attempt was made to conduct discovery in that about 60 day span. However, your honor, after that at the hearing, they were allowed to present witnesses who were not previously announced, including an expert witness who was then clear what the evidentiary support was for their position. And then what happened subsequently over the course of the many years of the case, it was devoted to whether Mr. Shakar had purged himself of contempt or not, which was the exact same issue. However, what we believe was inappropriate, over that course of time, repeatedly Teledyne was allowed to augment the record. They were allowed to give subsequent affidavits from Mr. Manley. They were allowed to give subsequent affidavits from their expert, Mr. Rothman, on several occasions. There is no just basis to say we should be denied discovery when they're augmenting their testimony and providing new evidence that goes to the question of whether the person himself had contempt. So even if we had waived the earlier discovery foibles that you point to, the time period after the contempt hearing, they augmented the record on several occasions. And there was no reason why we shouldn't have been able to conduct discovery, which was targeted and reasonable to the new issues they raised in all the new affidavits they submitted. The other prong of the court's decision, which again has nothing to do with the credibility, it was actually the attorney's testimony. You could find, and the district could have found, that Mr. Shakar was absolutely full of it about the phone, but his attorney testified under oath that he met with him at a hotel, he provided him with the Teledyne phone, that it was in completely usable condition, it was fully operational, it contained all the Teledyne data. It then went to the expert, Rothman, after last being in the hands of the attorney. The district court made no suggestion that the attorney was lying or fudging or manufacturing facts. The only rebuttal that came was the district court's rebuttal in a footnote. In footnote 13 of their decision in 2015, the district court on its own provided its own testimony. The district court testified in a sense that my own experience is with cell phones that sometimes you can set them so that they will lock in the future. That was the district court's testimony. It was not a rebuttal to the attorney's testimony. Is there any doubt that that's true? Yes, I don't believe that's true. I've never done it, Judge. Oh, you've never done it, but it's plainly true. You can just look up on the website instructions on manufacturer's sites about how you do that. Perhaps, Judge, but we have to rely on facts and evidence. You cannot have a factual dispute unless there's a good faith basis for it. There's not even any good faith basis for disagreeing with that statement. I think respectfully there is, Judge. Think about the phone again. The district court enters an injunction requiring your client to turn over the Teledyne phone within five days. He turns it over five weeks later. The contempt is clear. His statement about the passcode is, I modified the phone to eliminate the passcode. That's a confession to violating the injunction because the injunction says you must turn it over unmodified. You have a client whose contempt is unambiguous and whose defense of that particular charge concedes another contempt. You have to understand that the district judge would be pretty skeptical of anything else that happened. I understand that, Judge, but I do take umbrage with the fact that a district court on its own can rebut facts not of record with their own testimony about their own experience with cell phones. I happen to disagree with the court on that point. The other technological issue was USB drives. Now, it was unrebutted, including by name of Teledyne employee who currently worked there, including by name of Teledyne customer, by name and company, of all the different individuals that used USB drives into the side of Mr. Chicago's computer. It would have been quite easy for Teledyne to provide any rebuttal to that, including by way of its present employees, including by way of its customers. It chose not to because there was no basis to rebut that. And again, it's not a credibility finding because he turned in eight USB drives. There were a number of additional USB drives connected. He provided unrebutted testimony by name of all the individuals who used the USB drives on his computer. Teledyne didn't dispute that. The district court didn't dispute that. But yet again, they made a finding that we're just going to disbelieve pure, clear, factual evidence presented by Mr. Chicago. The other issue from a technological standpoint which permeated the case was the transfer of data issue. And in this court, in this issue, the district court simply got it backwards. The district court leaned in on this issue and asked the expert, are you telling me that there was a transfer of data from Teledyne servers to Mr. Chicago's server, which would be a bad inference, Mr. Shakar? The expert categorically said, no, I'm not saying that. I can't tell you if there was a data transfer one way or the other. The district court, in its opinion, ignored that testimony and forgot that it quizzed the expert on the subject and made the finding without any basis or any rebuttal that the data shift had gone to Mr. Shakar, therefore supporting an inference that he had engaged in illegal conduct. I thank you for your time. Thank you, counsel. Ms. Grumit-Morris. May it please the court. This is a case about Teledyne's former employee, Raj Shakar, who took company information, refused to return it, notwithstanding an injunction, and spent more than a year submitting false and perjured testimony to the court, refusing to comply with the court's orders, and threatening and making outrageous personal attacks on witnesses, counsel, and the court alike. After 18 months of this type of litigation, the court found that Shakar was still in contempt of court, had repeatedly lied to the court, and terminated the litigation as a result of that misconduct. Now, there are two primary issues in this appeal. First, whether the district court properly acted within its discretion to find Mr. Shakar in contempt of court, and second, whether the district court properly exercised its discretion to terminate the litigation on account of that misconduct. As to the first issue, it was Teledyne's burden to show by clear and convincing evidence that the preliminary injunction set forth unambiguous commands, that Shakar violated those commands in a significant way, and that he did not take steps to reasonably and diligently comply. This court reviews that decision to enter a finding of civil contempt of court under a highly deferential abuse of discretion standard. Now, critically, Shakar does not challenge the underlying injunction or argue that in any way it was ambiguous. For having conceded that point, he waives any challenge to that order. Therefore, the only question is whether the district court properly exercised its discretion when it found that he had violated the injunction's commands. Now, on appeal, Shakar focuses on the findings of fact of the ways in which he had not complied with those commands, and this court reviews those findings of fact for clear error, meaning that Shakar can only prevail if, on the basis of the entire record, this court is left with a firm and definite conviction that a mistake has been made. Now, Shakar tries to meet that high standard by focusing almost exclusively on the testimony of Daniel Rothman, the computer forensic analyst retained by Teledyne who testified at the hearing in this matter. But there are two important points with respect to Mr. Rothman's testimony. First, the district court did not rely solely or exclusively on Mr. Rothman's testimony to find Shakar in contempt of court. It also relied on his own admissions of the ways in which he was not in compliance with the court's orders, his shifting testimony on things like the iPhone, and the court's own credibility assessments. The second important point is that Shakar's conduct and statements throughout the course of the case show that the district court did not clearly err in finding him in contempt of court. At the hearing, Mr. Shakar unequivocally testified that he had no thumb drives, no external hard drives, and he had not connected any such device to his Teledyne-issued laptop. After being found in contempt of court, he produced eight thumb drives, one external hard drive, admitted that he had had another hard drive in his possession in the recent past, and that all of those devices had been connected to his company-issued laptop. So even without Mr. Rothman's testimony, the district court's finding of fact of the ways in which Shakar had violated the injunction's commands, those findings of facts were not clearly erroneous. Now on appeal, Shakar's main argument appears to be that there was a Federal Rule of Civil Procedure 26 violation. He says that the court should not have admitted Rothman's testimony because there was no expert report produced.  First, Rule 26's expert disclosure and report production requirements are triggered where the parties are 90 days out from trial or where there is a schedule set by the court for expert disclosure and report production. Neither of those were the case here. Second, Shakar never objected before, during, or after the hearing where Mr. Rothman testified on the basis of Rule 26, and so he has waived that argument on appeal. Now Shakar raises two other matters that he contends show an abuse of discretion by the district court. First, he says that the district court should have credited his various affidavits that he says shows that he had perched himself with contempt. But the district court continually found that Shakar's testimony, whether live in court or via affidavit, was not credible. And this court reviews credibility assessments for clear error, giving great deference to the district court's credibility determinations, and will not disturb those determinations unless they are without some foundation in the record. Here, the district court did not clearly err, where it based its credibility determinations on having seen Shakar testify twice in front of the court, as well as all of his various affidavits that were inconsistent with one another, inconsistent with his prior testimony, and inconsistent with the objective evidence that had been produced so far in the case. The second important point is that Shakar contends, as counsel just argued, that he was denied discovery and additional hearings, which again, he says, would have shown that he had perched himself with contempt. But he can't show an abuse of discretion here either, where the record shows that he was repeatedly given opportunities to do discovery. For example, in July of 2015, after being found in contempt of court, the district court three times invited him to bring in an expert statement or report to challenge Rothman's testimony and to reopen the evidentiary hearing. At the end of that month, Shakar abandoned that effort and moved on to efforts to show that particular external hard drives did not exist. He pursued that for several months until abandoning that effort when the evidence showed that, in fact, they did exist, and one of those had actually been shipped to his own house. In February of 2016, the district court invited Shakar to file a brief to reopen discovery, including, among other things, to allow him to depose Mr. Rothman. Shakar never filed that brief, and therefore he has again abandoned that effort at discovery and waived it on appeal. As to additional hearings, the record again shows that Shakar benefited from multiple hearings over the course of the case, where his attorneys were able to come in and argue about the ways in which he was in compliance with the court's orders. And as to additional evidentiary hearings, Shakar identifies no authority by which he was entitled to a second evidentiary hearing. He simply says he wanted one and was denied such a hearing, and vaguely references due process. But there is nothing in due process that requires that he get a second evidentiary hearing, particularly where here he was allowed to make any argument, submit any affidavit, present any evidence he wanted throughout the case. His problem is that he consistently relied on his own testimony via affidavit, and the district court repeatedly found that that was just not credible. The district court never found any legitimate dispute of fact that would benefit from an additional hearing, evidentiary hearing, and Shakar cannot and does not show that that was an abuse of discretion. The second issue on appeal relates to Shakar's argument that the district court entered a punitive sanction when it dismissed his counterclaims. That argument, though, is either a misunderstanding or a misconstrual of what the district court did in its August 22, 2016, decision. In that decision, the district court did two things. First, it found that Shakar was still in contempt of court, and it awarded Teledyne all of its fees and costs incurred in proving that contempt of court. Second, however, the district court exercised its inherent power to control litigation and found on the basis of the entire record that Shakar's misconduct was so extreme that it was going to terminate the litigation. This court reviews the district court's exercise of its inherent power for abuse of discretion, and here there was no abuse of discretion. The district court recounted all of the ways in which, for more than a year, Shakar had persisted in refusing to comply with the court's orders, all the ways in which he submitted untruthful testimony, and outrageous threats and personal attacks on witnesses who provided adverse testimony to him, counsel, and the court alike. The district court also identified several lesser sanctions that it had threatened him with that hadn't proven successful in controlling and correcting Mr. Shakar's behavior. Shakar argues in response only that his misconduct didn't affect his counterclaims, so at least those should have been allowed to proceed. But that misses the point where his conduct was a total disregard for the truth and the integrity of the legal process, and that was broader than any particular set of claims. It would also, we would respectfully suggest, be a perversion of justice if, by way of his misconduct, he could get rid of claims against him and still proceed on his counterclaims for damages against Teledyne. On this record, the district court did not abuse its discretion when it exercised its inherent power to control the litigation, enter judgment for Teledyne, and dismiss Shakar's counterclaims. Unless the panel has any questions, we would ask that you affirm all of the district court's orders in this case, and I thank you for your time. Thank you very much, counsel. The case is taken under advisement.